# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| C&W FACILITY SERVICES INC. d/b/a C&W SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>SONIA L. MERCADO,<br><br>Defendant. | Civil Action No. 18-11915 |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff C&W Facility Services Inc. d/b/a C&W Services ("C&W Services" or the "Company"), by and through its undersigned attorneys, brings this Verified Complaint for Injunctive and Other Relief against Defendant Sonia L. Mercado ("Mercado") and states as follows:

## PRELIMINARY STATEMENT

C&W Services is engaged in the sale and provision of integrated facilities services. Mercado worked as a Janitorial Supervisor for C&W Services. In connection with her employment, Mercado executed an Agreement Against Unfair Competition ("Agreement"). In the Agreement, in addition to other covenants, Mercado agreed that for two (2) years following the termination of her employment (the "Restricted Period"), she would not, directly or indirectly, provide facilities services to customers of C&W Services for which she had responsibility, knowledge of or access to confidential information about, while employed by C&W Services. She further agreed that during the Restricted Period, she would not provide facilities services at any property, location or building at which she had provided facilities services on behalf of C&W Services within the last two years prior to the termination of her employment. Mercado recently

provided notice of her resignation from C&W Services and her intention to commence employment in a facilities services role at the same property and on behalf of the same customer for which she had provided services on behalf of C&W Services, in direct violation of the Agreement. When C&W Services reminded Mercado of her post-employment obligations pursuant to the Agreement, Mercado confirmed that she does not intend to comply with the restrictions contained in the Agreement. Having no adequate remedy at law and no other choice, C&W Services has filed this action seeking injunctive and equitable relief in the form of an order enjoining Mercado from breaching the Agreement, as well as damages and contractually recoverable attorney's fees arising from the breach.

## PARTIES, JURISDICTION, AND VENUE

1. C&W Services is a Massachusetts corporation with its principal place of business at 275 Grove Street, Suite 3-200, Auburndale, Massachusetts.

2. Mercado is an individual who, upon information and belief, is a citizen of New Hampshire and resides at 44 New Zealand Road, Apt. 29, Seabrook, New Hampshire.

3. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000. Specifically, the economic value to C&W Services of obtaining the injunctive relief of enforcement of the restrictive covenants exceeds $75,000, because C&W Services stands to lose millions of dollars in revenue from the breach. In addition, C&W Services' attorney's fees in order to prosecute its claims for injunctive relief and breach of contract, which it is entitled to recover from Mercado as damages pursuant to the Agreement, will exceed $75,000.

4. Venue is proper in this Court because C&W Services is based in this district, the Agreement is subject to Massachusetts law, and the parties agreed to litigate all disputes arising from the Agreement in Massachusetts courts.

**FACTUAL ALLEGATIONS**

**C&W Services' Business and Customer Relationships**

5. C&W Services' predecessor, UNICCO, was founded in Massachusetts in 1949. In 2007, UNICCO was acquired by UGL Limited (formerly known as United Group Limited) ("UGL"), a company headquartered in Australia, with numerous subsidiaries and operating locations across the globe. UNICCO continued operating in Massachusetts as a Massachusetts corporation under the name UNICCO Service Company and later as UGL Services Unicco Operations. In late 2012, the company began operating in Massachusetts using the mark "DTZ, a UGL Company," and in 2013 changed its legal name to "DTZ, Inc." In 2015, following a merger between Cushman & Wakefield, Inc. and DTZ, Inc., the company changed its legal name to "C&W Facility Services Inc." and began operating as C&W Services.

6. C&W Services is and has been since its inception a national leader in providing a broad range of services to commercial property owners. Among other things, C&W Services provides day-to-day property management, facilities operations, and maintenance services..

7. Over many years, UNICCO, UGL, UGL Services, DTZ, and now C&W Services have invested enormous time and resources developing a thriving facilities management operation throughout the Northeast. The Company has recruited and developed a highly trained and experienced team of employees with many responsibilities, including generating new client contracts, servicing and maintaining existing client contracts, improving the quality of the Company's services, and generally expanding the business.

8. The market for facilities management and maintenance services is intensely competitive. C&W Services relies on its customer and prospective customer relationships and its knowledge of the customers' and prospective customers' business needs in order to maintain its competitive advantage. Over the years, a key to the Company's success – in addition to striving to provide the highest quality front-line customer service – is the constant development and maintenance of its good will and excellent customer relationships. C&W Services generates that good will by, among other things: (a) providing abundant training to its workers specific to its clients' needs; and (b) retaining workers who gain an in-depth understanding of its clients' service requirements.

9. In addition, over time, certain employees come to possess highly valuable proprietary and confidential information and/or good will that is integral to the successful operation of C&W Services' business. For example, certain employees, including Mercado, possess knowledge and information regarding customer contacts, the history of services C&W Services has provided to particular customers, budgeting, and specific customer needs and requirements.

10. C&W Services, therefore, takes substantial steps to protect its confidential information, customer relationships and goodwill, including, but not limited to, entering into restrictive covenant agreements with certain employees, including non-service provisions, that limit their ability to utilize C&W Services' confidential information and/or good will on behalf of themselves or C&W Services' competitors.

11. Absent these restrictive covenants, C&W Services' employees and/or competitors are able to exploit unfairly the Company's confidential information and/or good will.

**Mercado's Employment With C&W Services**

12. C&W Services hired Mercado in August 2017 as a Janitorial Supervisor to work at Lonza Biologics ("Lonza") in Portsmouth, New Hampshire, a customer for which C&W Services had provided janitorial and other services since 2005.

13. As Janitorial Supervisor, Mercado's duties consisted of scheduling personnel, establishing work standards in conjunction with the manager, conducting site evaluations/audits, monitoring inventory/equipment usage, maintaining budget control, and conducting safety training of personnel.

14. Through this role, Mercado had access to and utilized C&W Services' confidential information and customer good will, including, but not limited to, customer information, customer contract history, budgeting, personnel needs and specific servicing needs, and was introduced to C&W Services' customers and prospects by and through C&W Services.

15. With respect to Lonza, Mercado had access to C&W Services' client contacts at that location, spoke on behalf of the Company with respect to customer relations, and had in-depth knowledge of Lonza's servicing, budgeting, and personnel needs.

16. Mercado worked at the Lonza location from her start date through June 19, 2018, at or around which time Lonza terminated its contract for facilities services with C&W Services and, upon information and belief, entered into a new facilities services contract with UG2 LLC ("UG2"), a company that has utilized unfair practices against C&W Services in the past by attempting to use its good will and/or confidential information, and which were litigated in this Court in the matter captioned <u>DTZ, Inc. v. UG2 LLC et al</u>, 1:13-cv-10906-PBS, before Chief Judge Saris.

17. In that case, Judge Saris entered judgment in favor of DTZ, Inc. for $2MM and enforced non-service and other restrictive covenants that former DTZ, Inc. employees had breached in complicity with UG2.

**Mercado's Restrictive Covenant Agreement With C&W Services**

18. On or about June 19, 2018, Mercado's managers presented her with an offer letter to continue her employment at a new location, Lindt Chocolate. A true and accurate copy of the offer letter is attached hereto as Exhibit A.

19. As a condition of Mercado's continued employment, she was also presented with the Agreement, which she reviewed, understood and signed on June 19, 2018, pursuant to which, among other things, she agreed not to service customers of C&W Services for a limited period of time after her employment with C&W Services ended. A true and accurate copy of the Agreement is attached hereto as Exhibit B.

20. In consideration for Mercado's continued employment at C&W Services and for agreeing to the non-service covenants set forth in the Agreement, Mercado was to receive a $3,500.00 retention bonus, which was to be paid in two installments. The first payment for $2,500.00 was made to Mercado on July 13, 2018. The second was to be made in July 2019.

21. Paragraph 1.b. of the Agreement states:

> Employee acknowledges and agrees that Employer is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled and acquired by Employer at its great effort and expense. Employee further acknowledges and agrees that disclosing, divulging, revealing or using any of the Confidential Information or Trade Secrets, other than in connection with Employer's business or as specifically authorized by Employer, will be highly detrimental to Employer, and that serious loss of business and pecuniary damage may result therefrom.

22. Paragraph 1.c. of the Agreement states in part:

> Accordingly, Employee agrees, except as specifically required in the performance of services on behalf of Employer or with prior written authorization of Employer, Employee will not, while employed by Employer and for so long thereafter as the pertinent information or documentation remains confidential, directly or indirectly use, disclose or disseminate to any other person, organization or entity or otherwise use any Confidential Information or Trade Secrets.

23. Paragraph 2.a. of the Agreement states:

    > Employee acknowledges and agrees that solely by reason of employment by Employer, Employee has and will come into contact with and will have access to, develop and learn Confidential Information regarding some, most or all of Employer's customers and prospective customers, including but not limited to information regarding customer contacts and representatives, customer needs and requirements, and financial arrangements with customers, and will have access to and the benefit of goodwill developed by Employer with its customers.

24. Paragraph 2.b. of the Agreement states in part:

    > [F]or a period of two (2) years after employment with Employer ends, whether voluntarily or involuntarily, Employee will not directly or indirectly service, solicit, accept business from or transact business with, or offer to do any of the same regarding, customers or prospective customers of Employer for the purpose of selling products and services of the type developed, sold or provided by Employer, and for which customers or prospective customers Employee had responsibility or knowledge of or access to Confidential Information about while employed by Employer.

25. Paragraph 2.c. of the Agreement states in part:

    > [F]or a period of two (2) years after employment with Employer ends, whether voluntarily or involuntarily, Employee will not, directly or indirectly, provide services of the type developed, sold or provided by Employer, at any property, location or building at which they provided services during the two (2) years prior to the cessation of Employee's employment from Employer, or for which property, location or building Employee had responsibility or knowledge of or access to Confidential Information about while employed by Employer.

26. Paragraph 6 of the Agreement states:

> Employee acknowledges and agrees that compliance with the covenants set forth in this Agreement is necessary to protect the Confidential Information, business and goodwill of Employer, and that any breach of this Agreement will result in irreparable and continuing harm to Employer, for which money damages may not provide adequate relief. Accordingly, in the event of any breach or anticipatory breach of this Agreement by Employee… the parties agree that Employer shall be entitled to the following particular forms of relief as a result of such breach, in addition to any remedies otherwise available to it at law or equity: (a) injunctions, both preliminary and permanent, enjoining or restraining such breach or anticipatory breach, and Employee consents to the issuance thereof forthwith and without bond by any court of competent jurisdiction; and (b) recovery of all reasonable sums and costs, including attorneys' fees, incurred by Employer to defend or enforce the provisions of this Agreement.

27. Paragraph 11.(a) of the Agreement states:

> (a) Governing Law and Choice of Forum. This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws provisions. Employer and Employee agree that any action brought regarding this Agreement shall be brought only in the federal and state courts of Massachusetts, and that such courts shall have exclusive jurisdiction over any disputes regarding this Agreement. Further, Employer and Employee agree to the exclusive personal jurisdiction in such court(s), and hereby irrevocably waive any objection they may now or hereafter have to the laying of venue of any such action in such court(s), and further irrevocably waive any claim they may now or hereafter have that any such action brought in such court(s) has been brought in an inconvenient forum.

### **Mercado's Breach of The Agreement**

28. On or around July 19, 2018, within days of receiving her bonus payment, Mercado submitted her resignation from employment with C&W Services, with an effective date of July 21, 2018.

29. At this time, Mercado informed one of her managers that she intended to resume working at the Lonza location. When asked for specifics, Mercado untruthfully told her manager that Lonza had hired her directly, when she had instead been hired by UG2.

30. On July 20, 2018, C&W Services' General Counsel sent Mercado a letter (i) enclosing a copy of the Agreement; (ii) reminding her that she must comply with the terms of the Agreement; (iii) informing her that commencing employment at the Lonza location would constitute a material breach of the Agreement; and (iv) seeking confirmation that she would comply with the terms of the Agreement.

31. On August 2, 2018, Mercado sent C&W Services a letter indicating that she intended to continue working at the Lonza location, thereby admitting that she had, in fact, been providing services at the Lonza location. However, because Mercado sent this letter to the incorrect address, C&W Services did not receive it until August 15, 2018. Mercado also enclosed a check for $2,500.00 made out personally to C&W Services' General Counsel, as a purported return of the $2,500.00 consideration paid to her in July 2018, and which C&W Services has not deposited.

32. After receiving Mercado's letter, and upon further investigation, C&W Services confirmed that Mercado was employed with UG2 and working at the Lonza location.

33. On August 23, 2018, counsel for C&W Services sent Mercado and UG2 letters informing them that Mercado's provision of facilities services at the Lonza location violated the non-service provisions of the Agreement and requesting that Mercado cease working at that location immediately or any other location that would violate the Agreement.

34. On August 27, 2018, counsel for Mercado and UG2 sent counsel for C&W Services a letter indicating that Mercado would not be moved from the Lonza location and she would continue to work there.

## COUNT I

**(Breach of Contract)**

35. Paragraphs 1 through 34 are hereby incorporated by reference as though fully set forth herein at length.

36. C&W Services and Mercado entered into an Agreement which contains restrictions on, among other things, Mercado's provision of services to customers of C&W Services and/or properties at which Mercado previously provided services on behalf of C&W Services.

37. Mercado's provision of services at the Lonza location constitutes a material breach of the Agreement.

38. If Mercado continues to provide services at the Lonza location, C&W Services will suffer irreparable harm, including but not limited to, the use of its confidential business information by Mercado and competitors, the loss of profitable business opportunities with its customers and prospective customers, damage to its customer relationships, loss of good will, and decreased employee morale due to concerns about C&W Services' ability to protect its business because Mercado is now violating the non-service provisions in the Agreement.

39. C&W Services' business will be irreparably harmed, the extent of which cannot be readily calculated. C&W Services, therefore, has no adequate remedy at law.

40. Unless Mercado is preliminarily and permanently enjoined from breaching her Agreement with C&W Services, it will continue to be irreparably harmed.

41. C&W Services also has suffered monetary damages due to Mercado's breach and is entitled to recover those damages and attorney's fees pursuant to the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, C&W Services requests the following relief:

1. A preliminary and permanent injunction enjoining Mercado from breaching the terms of the Agreement, including through her provision of services at Lonza;

2. A preliminary and permanent injunction enjoining Mercado from using or disclosing C&W Services' Confidential Information;

3. An award of compensatory damages arising from the breach and attorneys' fees, expenses, and costs incurred by the Company to enforce the terms of the Agreement; and

4. Such other relief as the Court deems just and proper.

                    Respectfully submitted,

                    C&W FACILITY SERVICES INC.,

                    By its attorneys,

*/s/ Jeffrey S. McAllister*
Erik J. Winton, BBO #600743
erik.winton@jacksonlewis.com
Jeffrey S. McAllister, BBO #676301
jeffrey.mcallister@jacksonlewis.com
Jackson Lewis P.C.
75 Park Plaza
Boston, MA 02116
Dated: September 11, 2018          (617) 367-0025

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel for Sonia L. Mercado by electronic and first class mail on September 11, 2018.

>*/s/ Jeffrey S. McAllister*
>Jeffrey S. McAllister

## VERIFICATION

I, John Barros, under penalties of perjury, state as follows:

1. I am an adult and duly competent to testify in this matter.

2. I am the _Sr. Director of Operations_ of C&W Facility Services Inc.

3. I verify that the facts set forth in this Verified Complaint are within my personal knowledge and are true and correct, except as for those allegations which are stated on information and belief and, as to those, I believe them to be true and correct.

Dated: September 10, 2018

_/s/ John Barros_
John Barros