# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| C&W FACILITY SERVICES INC. d/b/a C&W SERVICES, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-11915-FDS |
| v. | ) ) ) | |
| SONIA L. MERCADO, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff C&W Facility Services Inc., d/b/a C&W Services, has moved for a preliminary injunction seeking to enjoin defendant Sonia Mercado, a former employee, from providing services at Lonza Biologics, a former customer of C&W, in violation of a restrictive covenant signed in the course of her employment. Defendant was a relatively low-level janitorial supervisor at C&W, and is performing the same role at UG2, a competitor, servicing the same customers. For the reasons that follow, the motion will be granted, although the restriction will be modified to reflect a reasonable temporal scope and to eliminate a fee-shifting provision.

**I.     Background**

C&W is a Massachusetts corporation that provides day-to-day property management, facilities operation, and maintenance services. (Ver. Compl. ¶¶ 1, 6). C&W invests time and resources to train its employees and generate customer goodwill and proprietary information about customer preferences. (*Id.* ¶¶ 8-9).

Defendant Sonia Mercado is a citizen of New Hampshire. (*Id.* ¶ 2). From August 2017 to June 19, 2018, C&W employed Mercado as a janitorial supervisor at C&W's Lonza Biologics location at a rate of pay of $18 per hour. (*Id.* ¶¶ 12, 16; Ex. A). In her position as janitorial supervisor, Mercado had access to C&W proprietary information concerning the preferences of Lonza Biologics. (*Id.* ¶ 9).

On June 19, 2018, C&W lost a bid for a five-year contract at Lonza Biologics to UG2, a competitor. (*Id.* ¶ 16). C&W then had its employees, including Mercado, sign non-service restrictive covenants. (*Id.* ¶¶ 18-19; Exs. A, B). By signing the non-service restrictive covenant, Mercado promised that, for two years after termination of employment with C&W, she would not provide services at any locations at which she had worked while in C&W's employ. (*Id.* ¶¶ 19, 24-25; Ex. B at 3-4). In consideration for her promise, Mercado was paid a $3,500 bonus from C&W. (*Id.* ¶ 20).[1]

On July 19, 2018, Mercado tendered her resignation at C&W in order to continue working at Lonza Biologics under the employ of UG2. (*Id.* ¶¶ 28-34). C&W filed suit to enforce the non-service restrictive covenant and enjoin Mercado from working at Lonza Biologics for the two-year term of the restrictive covenant.

## II. <u>Legal Standard</u>

To issue a preliminary injunction under Fed. R. Civ. P. 65, a district court must find that the moving party has established (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) that the balance of equities weighs in his favor, and (4) that a preliminary injunction is in the public interest. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (citing *Winter v. Natural Res. Def.*

---

[1] She may also have been promised (and may not have received) a $2 per hour raise.

*Council, Inc.*, 555 U.S. 7, 20 (2008)). Of those factors, the likelihood of success on the merits "normally weighs heaviest on the decisional scales." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009); *see also New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."). Furthermore, "[t]he burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). To obtain the more "extraordinary relief of a temporary restraining order," a party must allege "immediate and irreparable" injury or loss that will occur before the adverse party can be heard in opposition. *Imasuen v. Winn Prop. Mgmt.*, 2013 WL 6859094, at *3 (D. Mass. Dec. 26, 2013); Fed. R. Civ. P. 65(b)(1)(A).

The court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." *Rohm & Haas Elec. Materials, LLC v. Electronic Circuits*, 759 F. Supp. 2d 110, 114 n.2 (D. Mass. 2010). "The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction." *Boston Taxi Owners Ass'n v. City of Boston*, 84 F. Supp. 3d 72, 78 (D. Mass. 2015) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

### III. Analysis

#### A. Likelihood of Success on the Merits

First, C&W is likely to succeed on the merits of its claim. "Covenants not to compete, which generally include covenants not to work for a competitor, not to solicit customers of the former employer, and not to use confidential or proprietary information, are enforceable if they

3

protect a legitimate business interest of the employer and based upon all of the circumstances, they are reasonable in geographic and temporal scope." *National Eng'g Serv. Corp. v. Grogan*, 2008 WL 442349, at *4 (Mass. Sup. Jan. 29, 2008) (citing *All Stainless, Inc. v. Colby*, 364 Mass. 773, 779-80 (1974); *Marine Contractors Co. v. Hurley*, 365 Mass. 280, 287-88 (1974)). "A covenant not to compete solely designed to protect an employer from ordinary competition does not serve a legitimate business interest and is not enforceable." *Id.* (citing *Marine Contractors Co.*, 365 Mass. at 287-88; *Richmond Bros., Inc. v. Westinghouse Broadcasting Co.*, 357 Mass. 106 (1970)). "Protection of an employer's good will, however, is a legitimate business interest that may be secured through enforcement of covenants not to compete." *Id.* (citing *All Stainless, Inc.*, 364 Mass. at 779-80). "Good will is generally understood to refer to the benefit and advantage that accrue to a business from its positive reputation with its customers, acquired by its repeat business dealings with them, that enable it to retain their patronage and obtain new business." *Id.* (citing *Marine Contractors Co.*, 365 Mass. at 287). "A former employee with close association and relationships with an employer's customers is in a position to harm the employer's good will because the close relationship with the employer's customers may cause those customers to associate the former employee, and not the employer, with the product and services delivered to the customer through the efforts of the former employee." *Id.* (citing *All Stainless, Inc.*, 364 Mass. at 779-80). "Courts have been particularly willing to enforce covenants not to compete in order to preserve good will in the sales, marketing and staffing industries." *Id.* (citing cases).

  The non-service restrictive covenant here prohibits defendant, for a period of two years after the termination of employment, from providing services to those customers for which she provided services during her employment at C&W. C&W has a legitimate business interest in

4

protecting its goodwill and proprietary information about its customers.  That is true even for something as mundane as customer preferences for janitorial and cleaning services.

Defendant contends that it is common practice in the property-service industry that when a contract changes to a new provider, the lower-level employees of the former provider remain servicing the same customers and simply switch employers.  Even assuming that to be true, C&W has a legitimate interest in protecting against the consequences of that very phenomenon, at least as to supervisory employees.  C&W has invested resources in training its employees, assembling a work force, and having those employees learn the preferences and idiosyncrasies of its customers.  If a competitor such as UG2 could simply lure all of those employees away, including supervisors, the competitor would be able to provide identical services at a lower price, because it does not need to expend the resources necessary to assemble and train that work force.  Furthermore, the risk that the customer would be dissatisfied with the new provider, either temporarily during a period of transition or for a longer period of time, would be greatly reduced.

Defendant violated the agreement when she left her position at C&W and immediately began providing the same services at Lonza Biologics, but this time as an employee of UG2, a competitor of C&W.  While defendant may use her own skills and knowledge at UG2, she may not misappropriate the goodwill and proprietary information of C&W.  Accordingly, C&W has shown that the non-service restrictive covenant protects a legitimate business interest.

However, the non-service agreement must also be reasonable in scope to be enforceable.  In at least two respects, the agreement here is unnecessarily broad and therefore will not be enforced to its full extent.

First, the agreement is temporally overbroad.  The agreement as written would prevent defendant from working at Lonza Biologics for a period of two years.  But defendant is a low-

level supervisor, the scope of the proprietary information in her possession is limited, and there appears to be no reasonable need for such a long restriction. A period of four months will sufficiently serve plaintiff's interests, and protect its proprietary information, without unduly interfering with defendant's ability to work.

Second, the Court finds the contractual provision providing for reimbursement of plaintiff's attorney's fees, expenses, and court costs, is inappropriate in light of the facts of the case. Among other things, defendant is a low-level janitorial supervisor paid an hourly wage while plaintiff is a sophisticated company.

Defendant also received consideration for the restriction, and in fairness therefore should be paid $583.33 (a pro-rated portion of the bonus) as consideration in return for her inability to work at Lonza Biologics for four months.

Accordingly, C&W has shown that it is likely to succeed on its claim that defendant violated the terms of the non-service restrictive covenant.

### B. Likelihood of Irreparable Harm Absent Interim Relief

C&W has shown that failure to issue a preliminary injunction is likely to cause immediate irreparable harm to the company. If UG2 is able to continue to promise the customers of C&W seamless staffing transitions in order to secure contract bids at a lower price, C&W could continue to suffer ongoing competitive harm.

### C. Balance of the Equities

The balance of harms favors enjoining C&W from further violating the non-service restrictive covenant. Defendant would not suffer undue harm if the injunction issues. She would retain her position at UG2 and her ability to use her skills to earn a livelihood at one of UG2's other locations. The injunction would only restrain her from working at one of UG2's many

facilities in order to protect plaintiff's proprietary information. If the injunction does not issue, and UG2 is able to continue to promise the customers of C&W it will provide seamless staffing transitions in order to secure bids at a lower cost, C&W will suffer competitive harm.

### D. Impact on the Public Interest

Finally, the Court perceives little impact on the public interest in this case. Insofar as the public has a general interest in ensuring individuals the opportunity to carry on work without undue interference while also guaranteeing companies protection for their confidential or proprietary information, issuing the injunction furthers both ends.

The motion of C&W for a preliminary injunction against defendant will therefore be granted in part. The non-service agreement will be enforced as follows:

- Defendant will be prohibited from providing services at Lonza Biologics, or any other facility where she worked on behalf of C&W during the previous two years, for a period of four months.
- C&W shall not be entitled to reimbursement for the attorneys' fees, expenses, and court costs incurred to enforce the terms of the non-service agreement.
- C&W shall pay plaintiff $583.33 as consideration for the restriction.

## IV. Conclusion

For the foregoing reasons, the motion of plaintiff C&W Facility Services, Inc., d/b/a C&W Services, for a preliminary injunction is GRANTED in part and DENIED in part. A preliminary injunction order will issue separately.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: October 5, 2018                                United States District Judge